# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| **ROBERT SGROE** | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:12-CV-00144** |
| | § | **(Judge Clark/Judge Mazzant)** |
| | § | |
| | § | |
| **WELLS FARGO BANK, N.A. AND** | § | |
| **FEDERAL HOME LOAN MORTGAGE** | § | |
| **CORPORATION a/k/a FREDDIE MAC,** | § | |
| **Defendants.** | § | |

## PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**Eric A. Maskell**
State Bar No. 24041409

**Maskell Law Firm, P.C.**
P.O. Box 77272
Fort Worth, Texas 76177
Telephone: (682) 465-6503
Facsimile: (817) 887-2654
Email: ███████████████████████
Attorney for Plaintiff

1

# TABLE OF CONTENTS

INDEX OF AUTHORITIES……………………………………………………………..…ii

I.    INTRODUCTION AND BACKGROUND………………………………………………1

II.    OBJECTION TO EVIDENCE……………………………………………………………3

        Declaration of Michael John Dolan……………………………………………………4

        Declaration of Becky Howell……………………………….………………………………5

III.    ARGUMENTS AND AUTHORITY……………………………………………………7

        Plaintiff's claims under the Texas Fair Debt Collection Practices Act ("TDCA") and unreasonable collection efforts are valid………………………………………………..13

IV.    CONCLUSION………………………………………………………………………..15

CERTIFICATE OF SERVICE………………………………………………………………16

i

# INDEX OF AUTHORITIES

## CASES

*Alkas v. United Sav. Ass'n of Tex., Inc.,* 672 S.W.2d 852, 855-56
(Tex.App.-Corpus Christi 1984, writ ref'd n.r.e)...................................................11

*Bean v. Bluebonnet Sav. Bank FSB*, 884 S.W.2d 520, 522 (Tex.App.-Dallas 1994, no writ)................9

*Biggers v. BAC Home Loans Servicing, LP*, 2011 WL 588059 at *5
(N.D. Tex. February 10, 2011)(Fitzwater, J.)...................................................14, 15

*Cadle Co. v. Ortiz,* 227 S.W.3d 831, 837-38 (Tex.App.-Corpus Christi 2007, pet. denied)................12

*Clark v. Dedina,* 658 S.W.2d 293, 295 (Tex. App.-Houston [1st Dist.] 1983, writ dism'd).................9

*Federal Financial Co. v. Delgado,* 1 SW3d 181 –
Tex. Court of Appeals, 13th Dist. 1999.........................................................3, 10

*Florey v. Estate of McConnell,* 212 S.W.3d 439, 448 (Tex.App.-Austin 2006, pet denied)........10, 11, 12

*Fricks v. Hancock,* 45 S.W.3d 322, 327 (Tex.App.-Corpus Christi 2001, no pet.)...........................11

*Gomez v. Wells Fargo Bank, N.A.,* 2010 WL 2900351 at *4 (N.D. Tex.).....................................15

*Jordan v. Bustamante,* 158 S.W.3d 29, 34 (Tex.App.-Houston [14th Dist.] 2005, pet. denied).............11

*Katz v. Rodriguez,* 563 S.W.2d 627, 629 (Tex.Civ.App.-Corpus Christi 1977, writ ref'd n.r.e)...........12

*Kennedy Co., Inc. v. Forman,* 316 S.W.3d 129, 135
(Tex.App.-Houston [14th Dist.] 2010, no pet.)...............................................11, 12

*Leavings v. Mills,* 175 S.W.3d 301, 309 (Tex.App.-Houston [1st Dist.] 2004, no pet.)....................8, 9

*Longoria v. Lasater,* 292 S.W.3d 156, 165 n. 7 (Tex.App.-San Antonio 2009, pet. denied)................11

*Max Duncan Family Inv., Ltd. V. NTFN Inc.,* 267 S.W.3d 447, 453-54
(Tex.App.-Dallas 2008, pet. denied)..........................................................12

*McCammon v. Ischy,* No. 03-06-00707-CV, 2010 WL 1930149, at *7
(Tex.App.-Austin May 12, 2010, pet. denied)(mem.op.)........................................11

*Mortgage Electronic Registration Systems, Inc., as Nominee for
Greenspoint Funding, v. Nancy Groves,* No. 14-10-00090-CV, 2011 WL 1364070
(Tex.App.-Hous. (14th Dist.))................................................................10

*Sani v. Powell,* 153 S.W.3d 736, 746 (Tex.App.-Dallas 2005, pet. denied)................................11

*SMS Fin., LLC v. ABCO Homes, Inc.,* 167 F.3d 235, 238 (5th Cir. 199)..............................................9

*SSRB-IV, Ltd. V. Cont'l Sav. Ass'n,* No. 93-2377, 1994 WL 487237, at *4 n.13
(5th Cir. Aug. 18, 1994).................................................................................................8

*Sw. Guar. Trust Co. v. Hardy Rd. 13.4 Joint Venture,* 981 S.W.2d 951, 956-57
(Tex.App.-Houston [1st dist.] 1998, pet. denied)..........................................................11, 12

*Wells Fargo Bank, NA, as Trustee v. Laureno A. Ballestas et al,* No. 01-10-00020-CV
(Tex.App.-Houston [1st Dist.] May 12, 2011)..................................................................15

*Wright v. Matthews,* 26 S.W.3d 575, 578 (Tex.App.-Beaumont 2000, pet. denied).....................11, 12

## RULES/STATUTES

Tex. R. of Evid.

      Rule 902(10)(b)..............................................................................4, 5, 6, 7

      Rule 803(6)........................................................................................4, 5, 6

Tex. Bus. & Com. Code Ann.

      Section 3.301....................................................................................8

      Section 3.309....................................................................................8

      Section 3.201....................................................................................9

      Section 3.418....................................................................................8

Fed. R. Civ. Proc.

      Rule 56(c)......................................................................................7, 8

Tex. Fin. Code

      Section 392.304................................................................................15

Tex. Prop. Code

      Section 22.001................................................................................11

      Section 51.002................................................................................14

Tex. Civ.Prac. & Rem. Code Ann.

      Section 37.004................................................................................11

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **ROBERT SGROE**<br>**Plaintiff,** | §<br>§<br>§<br>§ | |
| **VS.** | §<br>§<br>§<br>§<br>§ | **CIVIL ACTION NO. 4:12-CV-00144**<br>**(Judge Clark/Judge Mazzant)** |
| **WELLS FARGO BANK, N.A. AND**<br>**FEDERAL HOME LOAN MORTGAGE**<br>**CORPORATION a/k/a FREDDIE MAC,**<br>**Defendants.** | §<br>§<br>§<br>§<br>§ | |

## PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**TO THE HONORABLE U.S. DISTRICT JUDGE:**

Plaintiff Robert C. Sgroe (hereinafter referred to as "Plaintiff") asks the Court to deny Defendants' Motion for Summary Judgment and would show unto the Court as follows:

### I. Introduction and Background

1.      Plaintiff purchased the property located at 125 FM 2560, Sulphur Springs, Texas 75482 on April 21, 2003.  While the Note is dated April 18, 2003 the Plaintiffs did not sign the Note until April 21, 2003.  The original mortgagee was Northwood Mortgagee, Inc.  The original principal amount of the loan was $86,100.00.

2.      The property was sold at foreclosure sale on September 1, 2009 by Shannah Walker, as substitute trustee of the property described in the deed of trust dated April 18, 2003 but executed on April 21, 2003 by Plaintiff, and recorded in the real property records of Hopkins County, Texas securing the obligations therein described as Original Mortgagee, Northwood Mortgage, Inc.

1

Again, the Deed of Trust was dated April 18, 2003 but not executed by Plaintiffs until April 21, 2003.

3.      Northwood Mortgage allegedly assigned the deed of trust to Defendant Wells Fargo on April 18, 2003.

4.      On December 16, 2008, Defendant Wells Fargo sent to Plaintiff a letter informing him that he was being considered for a loan modification and that he needed to call Defendant. Plaintiff contacted Defendant for the purpose of seeking a loan modification and gave Defendant financial information to initiate the modification process. On January 7, 2009, Defendant Wells Fargo sent Plaintiff a letter acknowledging the recent telephone conversation between Plaintiff and Defendant and asked for more financial information from Plaintiff.

5.      In a letter dated February 3, 2009, Plaintiff was granted a partial reinstatement of his mortgage and repayment agreement from Defendant Wells Fargo on the condition that he would pay Defendant one hundred dollars per month. Plaintiff continued to make payments but did not realize that he was making payments to a different loan account number. Plaintiff subsequently called Defendant Wells Fargo and attempted to pay Defendant on the correct mortgage loan. Defendant told Plaintiff not to send payment and that any payment would be sent back because Defendant was working on the loan modification. Plaintiff called Defendant numerous times to ascertain his payment amount and remit payment but Defendant repeatedly told Plaintiff that it would not accept payment and that he needed to call back the following week.

6.      On August 22, 2009, Plaintiff received a letter from Defendant Wells Fargo acknowledging Plaintiff's request for assistance with his mortgage payments. Defendant informed Plaintiff that it was reviewing his request, would contact Plaintiff periodically, and that Plaintiff could expect to receive a final decision on his request within the next forty-five to sixty days.

2

7.      On August 24, 2009, Plaintiff received another letter from Defendant Wells Fargo again stating that Plaintiff's request for assistance was received, he would be contacted periodically, and that a final decision would be made on his request within the next forty-five to sixty days.

8.      On August 27, 2009, Plaintiff called Defendant Wells Fargo at 800-416-1472 and spoke to Defendant's customer service representative Beatrice. Beatrice informed Plaintiff that he qualified for a loan modification program on the condition that Plaintiff send a payment of twenty dollars to Defendant.

9.      On August 29, 2009, Plaintiff wired twenty dollars to Defendant Wells Fargo through Western union, wire number 484-146-3294. Defendant accepted the payment.

10.     On September 1, 2009, the home was foreclosed via a trustee's sale in Hopkins County, Texas.

## II. OBJECTION TO EVIDENCE

11.     Plaintiff objects to the alleged "facts" as stated in Defendants "Summary of Relief Sought" and "Statement of Undisputed Material Facts" for the reason that it amounts to legal conclusions. Additionally, Plaintiff objects to the alleged "facts" as they amount to hearsay. Finally, it is based on speculation on the part of the Defendant.

12.     Specifically, Plaintiff denies that the note was executed on April 18, 2003. As the court can clearly see the Note and Deed of Trust were both executed on April 21, 2003. This means that the alleged "allonge to note" which was dated April 18, 2003, pre-dated the Note, was not attached and therefore is invalid as a matter of law. *Federal Financial Co. v. Delgado*, 1 SW3d 181 – Tex. Court of Appeals, 13th Dist. 1999. Additionally, the "allonge to note" was signed by Joyce Lockwood as Vice President of Loan Documentation as Attorney in Fact for Wells Fargo, however Defendants stated in their discovery responses that "after a diligent search, there is no record of "Joyce Lockwood" in the Wells Fargo human resources files. (Exhibit PA) Therefore a fact issue arises.

3

13.     Plaintiff objects that WELLS FARGO is the current holder and owner of the Note as stated in "Statement of Undisputed Material Facts". Defendant states that "On April 18, 2003, Northwood Mortgage, Inc. assigned the Note and Deed of Trust to Wells Fargo Home Mortgage, Inc.". Further Defendant states "On May 8, 2004, Wells Fargo Home Mortgage, Inc, merged into its parent, Wells Fargo Bank, N.A.". Without the "allonge to note" and the subsequent fraudulent transfers Wells Fargo is not the legal owner of the note and/or deed of trust and therefore the foreclosure sale was void as a matter of law. A fact issue arises as to who the true owner of the property is. Additionally, if the property was sold at foreclosure sale then by its own admission Wells Fargo is not the owner or holder of the note. According to check #000808930 dated October 2, 2009 Freddie Mac's ownership is listed at 1%. (Exhibit PB)

### Declaration of Michael John Dolan

14.     Plaintiff objects to the evidence attached to Defendant's motion for summary judgment. Defendant attached a declaration of Michael John Dolan ("Dolan"), a "Litigation Support Manager" for Wells Fargo Bank, N.A. ("Wells Fargo"). The declaration attempts to prove that the records attached to the declaration are business records of Wells Fargo. The declaration, however, fails to meet the standards for business records as provided in Texas Rule of Evidence 902(10)(b) which renders the attached evidence inadmissible for use in the proceedings of this motion and trial of the case.

15.     Texas Rule of Evidence 902(10)(b) sets forth a form affidavit to be used in proving-up business records. The rule states,

> [a]ny record or set of records or photographically reproduced copies of such records, which would be admissible under Rule 803(6) or (7) shall be admissible in evidence in any court in this state upon the affidavit of the person who would otherwise provide the prerequisites of Rule 803(6) or (7)…

Texas Rule of Evidence 803(6) states,

4

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10)...

In order to meet the requirements of these two rules, the records must have been *made* at or near the time *by a person* with relevant knowledge. Herein lies the problem with Dolan's declaration.

16.     Dolan does not state how long he has been working for Wells Fargo. The documents attached were allegedly signed and/or created back in 2003. Years prior to Dolan becoming employed with Wells Fargo. He further states that "My responsibilities include review of Wells Fargo's business records to confirm facts on **certain litigated cases**, including this case" and "I am a custodian of records of Wells Fargo...". Dolan states he has personal knowledge of each of the matters stated in this declaration. However, Dolan does not state that he has personal knowledge that the documents were made at or near the time by a person with relevant knowledge. Instead, he states that he has knowledge of the "procedures at Wells Fargo for receiving, making and maintaining business records with respect to loans owned and/or serviced by Wells Fargo such as the Sgroe loan". Obviously, he cannot state that he has personal knowledge of the creation of these documents as he is an employee of Wells Fargo, not Northwood Mortgage Inc. However Rule 902(10) does not provide that documents will be authenticated through an affidavit of a person who *received* the documents, but by an affidavit of a person who *made* the documents. Dolan's declaration fails to do this. Further, Defendants fail to provide said "servicing agreement" that establishes their authority to service the loan on behalf of either Northwood Mortgage Inc. or Wells Fargo. Plaintiff would object to these statements as hearsay.

## Declaration of Becky Howell

.

5

17.     Plaintiff objects to the evidence attached to Defendant's motion for summary judgment. Defendant attached an affidavit of Becky Howell ("Howell"), a "Chief Administrative Officer" of Foreclosure for National Default Exchange, LP, which is an affiliated service provider for Barrett Daffin Frappier Turner & Engel, LLP. The affidavit attempts to prove that the records attached to the declaration are business records of Barrett Daffin. However, Howell is not even an employee of Barrett Daffin. The affidavit, however, fails to meet the standards for business records as provided in Texas Rule of Evidence 902(10)(b) which renders the attached evidence inadmissible for use in the proceedings of this motion and trial of the case.

18.     Texas Rule of Evidence 902(10)(b) sets forth a form affidavit to be used in proving-up business records. The rule states,

> [a]ny record or set of records or photographically reproduced copies of such records, which would be admissible under Rule 803(6) or (7) shall be admissible in evidence in any court in this state upon the affidavit of the person who would otherwise provide the prerequisites of Rule 803(6) or (7)…

Texas Rule of Evidence 803(6) states,

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10)…

In order to meet the requirements of these two rules, the records must have been *made* at or near the time *by a person* with relevant knowledge. Herein lies the problem with Howell's affidavit.

19.     Howell states that she works for Foreclosure for National Default Exchange, LP. She further states that "I am a custodian of records of Barrett Daffin with respect to this matter". Again, Howell is not an employee of Barrett Daffin and is attempting to provide an affidavit as to the business records of a different company. Howell, further states that "it was the regular course of business for an employee or representative of Barrett Daffin, with knowledge of the

6

acts or events recorded, to make the records or to transmit information…". Howell states she has personal knowledge of each of the matters stated in this declaration. However, Howell does not even work for Barrett Daffin. It seems highly improbable that Foreclosure for National Default Exchange, LP would be the custodian of records for a law firm due to the confidentiality issues that would go with exposing clients records to a third party. Obviously, she cannot state that she has personal knowledge of the creation of these documents as she is an employee of Foreclosure for National Default Exchange, LP not Barrett Daffin. However Rule 902(10) does not provide that documents will be authenticated through an affidavit of a person who *received* the documents, but by an affidavit of a person who *made* the documents. Howell's affidavit fails to do this.

20.     As Defendants failed to provide any further affidavits regarding the business records used to support their summary judgment, the documents should not be admitted into evidence for the use in the summary judgment motion or in trial.

### III.     ARGUMENTS AND AUTHORITY

21.     A response to a motion for summary judgment serves two purposes: one, it identifies defects in the motion and, two, presents reasons why the summary judgment should not be granted. As shown above, Plaintiff has identified the defects in Defendant's summary judgment evidence. The summary judgment, however, should be denied because Defendants have failed to prove that no fact issue exists.

22.     The essential problem with Defendant's argument is that Defendants cannot prove that no fact issue exists regarding the alleged transfer of the mortgage agreement between Northwood Mortgage, Inc., Wells Fargo and Plaintiff. Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that

the moving party is entitled to judgment as a matter of law". FED. R. CIV. P. 56(c). In this instance Defendant has failed to establish that no genuine issue of fact exists. Additionally, Defendant would state that the burden to establish a genuine issue of material fact shifts once the moving party meets its burden. The Defendant has not met its burden and therefore the burden never shifts to the Plaintiff. The Defendant attempts to meet its burden with unauthenticated documents and hearsay and wholly fails as a matter of law.

23.     Plaintiff has alleged that Defendants were never holder of the Note or Deed of Trust. Wells Fargo claims that it is the current holder of the Note and Deed of Trust. Promissory notes are negotiable instruments that may be enforced by a holder of the instrument, a non-holder in possession of the instrument who has the rights of a holder, a person not in possession of the instrument who is entitle to enforce it as a lost, destroyed, or stolen instrument, or a person not in possession of an instrument from whom a prior payment on the instrument has been removed. TEX.BUS. & COM.CODE ANN. §§ 3.301, 3.309, 3.418(d). Regardless, a party has to be a holder or owner of the Note "in order to be entitled to enforce the note, foreclose on collateral, and obtain a deficiency judgment under common-law principles of assignment." *Leavings v. Mills*, 175 S.W.3d 301, 309 (Tex.App.-Houston [1st Dist.] 2004, no pet.) (where the court allowed an assignee to enforce a note). "A transferee of a note who has not yet acquired possession of a note is not the holder of the note and therefore does not have a holder's right to receive payment of the note." *SSRB-IV, Ltd. V. Cont'l Sav. Ass'n*, No. 93-2377, 1994 WL 487237, at *4 n.13 (5th Cir. Aug. 18, 1994). Even without the "holder's right to receive payment,' an owner may enforce a note, but must "prove the transaction through which the note was acquired" in order to do so. *Id.* at *4.

Proving the transaction through which the Note was acquired, in the case at bar, requires Wells Fargo or Freddie Mac to show that the Note, in addition to the Deed of Trust, was

8

transferred to it via assignment. In other words, Wells Fargo or Freddie Mac must prove a chain of custody of the Note (not the Deed of Trust) ending with it, in order for it to show it can enforce or foreclose upon the Note. More importantly, the burden of proving Wells Fargo or Freddie Mac are the holder or owner of the Note falls upon Defendants, who wish to enforce the Note, not the Plaintiff. It is impossible for Plaintiff, in their complaint, without the benefit of formal discovery in this matter, to prove a negative. Most importantly, Plaintiff has pled sufficient factual allegations showing that Wells Fargo or Freddie Mac were never the holder, transferee, or owner of the Note.

Without procedural safeguards, multiple parties could force a debtor to pay multiple times on note. Without any evidence regarding possession of a note, a party is not of the note and cannot take actions to enforce the note or otherwise foreclose upon the note. TEX.BUS.COM.CODE § 3.201. A party seeking to enforce a note, must prove (1) that a certain note is in question, (2) that the party sued signed the note, (3) that the one seeking enforcement is the owner or holder of the note, and (4) that a certain balance is due and owing on the note. *Leavings v. Mills*, 175 S.W.3d 301, 309 (Tex.App.-Houston [1st Dist.] 2004); *SMS Fin., LLC v. ABCO Homes, Inc.,* 167 F.3d 235, 238 (5th Cir. 1999); *Bean v. Bluebonnet Sav. Bank FSB*, 884 S.W.2d 520, 522 (Tex.App.-Dallas 1994, no writ); *Clark v. Dedina*, 658 S.W.2d 293, 295 (Tex.App.-Houston [1st Dist.] 1983, writ dism'd).

Wells Fargo or Freddie Mac did not become the owner of the Note, and Wells Fargo or Freddie Mac could not have become a holder of the Note. Plaintiff pled that Wells Fargo and/or Freddie Mac were never a holder or owner of the Note in question, therefore could not seek to enforce the Note. Wells Fargo claims that it received the Note through an "allonge to note". However, as alleged by Plaintiff, the "allonge to note" is invalid as a matter of law. Black's law dictionary defines an allonge as

9

> When the indorsements on a bill or note have filled all the blank space, it is customary to annex a strip of paper, called an "allonge," to receive the further Indorsements

In this instance the Court can see that there is ample space attached to page 3 of 3 of the original note for any indorsements that would have been contemplated at the outset of the mortgage.  In *Federal Financial Co. v. Delgado*, 1 SW3d 181 – Tex. Court of Appeals, 13th Dist. 1999 the court stated the general rule under Texas law:

> An allonge is a piece of paper annexed to a negotiable instrument or promissory note, on which to write endorsements for which there is no room on the instrument itself. BLACK'S LAW DICTIONARY 76 (6th ed.1990). The general rule under the law in effect for this case is that an allonge may be used only when there is not adequate space on the instrument for an indorsement. *Crossland Sav. Bank FSB v. Constant*, 737 S.W.2d 19, 21 (Tex. App.-Corpus Christi 1987, no writ); *see also* 4 WILLIAM D.HAWKLAND & LARRY LAWRENCE, HAWKLAND UNIFORM COMMERCIAL CODE SERIES § 3-202:05 (1998). When space exists for further indorsements, a purchaser is not put on notice that there may have been an indorsement on a separate 186*186 paper. HAWKLAND & LAWRENCE, *supra* § 3-202:05.

Therefore Plaintiff objects to the allonge as evidence and states that the "Allonge to Note" is a falsified, forged document.  Additionally, previously stated the "allonge to Note" predates the note by 3 days and is signed by a Wells Fargo vice president of loan documentation that according to Wells Fargo does not exist.  The court can also see that there appear to be two "allonges" with separate hole punches.  (Exhibit PC1 and 2)  Without the "Allonge to Note," submitted by Wells Fargo as evidence, there is no endorsement in blank or without recourse and Wells Fargo would need to establish a legitimate transfer of the Note and Deed of Trust.  Defendants cannot prove as a matter of law that it is entitled to summary judgment.

24.     Texas recognizes both a common law Suit to Quiet Title as well as a statutory Trespass to Try Title.  The Court of Appeals of Texas succinctly addressed "quiet title actions" and the matter of strength of title in *Mortgage Electronic Registration Systems, Inc., as Nominee for Greenspoint Funding, v. Nancy Groves*, No. 14-10-00090-CV, 2011 WL 1364070 (Tex.App.-Hous. (14 Dist.)):

> A suit to quiet title is equitable in nature, and the principal issue in such suits is "the existence of a cloud on the title that equity will remove." *Florey v. Estate of McConnell*, 212 S.W.3d 439, 448 (Tex.App.-Austin 2006, pet denied)

10

(quoting *Bell v. Ott,* 606 S.W.2d 942, 952 (Tex.Civ.App.-Waco 1980, writ ref'd n.r.e)). A "cloud" on legal title includes any deed, contract, judgment lien or other instrument, not void on its face, that purports to convey an interest in or makes any charge upon the land of the true owner, the invalidity of which would require proof. *Wright v. Matthews,* 26 S.W.3d 575, 578 (Tex.App.-Beaumont 2000, pet. denied). A suit to quiet title "'enable[s] the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right.'" *Florey,* 212 S.W.3d at 448 (quoting *Thomson v. Locke,1 S.W. 112, 115 (Tex. 1886)).*

Courts have used the term "suit to quiet title" to refer to legal disputes regarding (1) title to and possession of real property; and (2) the validity of other "clouds" on an undisputed owner's title to real property. *Compare Alkas v. United Sav. Ass'n of Tex., Inc.,* 672 S.W.2d 852, 855-56 (Tex.App.-Corpus Christi 1984, writ ref'd n.r.e) (suit to adjudicate ownership of property to determine whether creditors of original owner retained interest in property purportedly conveyed to new owner was action "to quiet title"), *with Sw. Guar. Trust Co. v. Hardy Rd. 13.4 Joint Venture,* 981 S.W.2d 951, 956-57 (Tex.App.-Houston [1st dist.] 1998, pet. denied)(undisputed property owner's action to invalidate lien and deed of trust securing lien constituted suit "to quiet title"); *see also Florey,* 212 S.W.3d at 449 (distinguishing between "suits to quiet title that are equivalent to trespass-to-try-title actions" and suits to quiet title involving interests that only 'indirectly impact' title to and possession of real property).FN1

FN1. Other decisions have stated that a suit to quiet title is distinct from a trespass to try title action. *See, e.g., Longoria v. Lasater,* 292 S.W.3d 156, 165 n. 7 (Tex.App.-San Antonio 2009, pet. denied); *Fricks v. Hancock,* 45 S.W.3d 322, 327 (Tex.App.-Corpus Christi 2001, no pet.); *McCammon v. Ischy,* No. 03-06-00707-CV, 2010 WL 1930149, at *7 (Tex.App.-Austin May 12, 2010, pet. denied)(mem.op.).

The first type of claim, which involves title to and possession of real property, is essentially "the equivalent to [a] trespass-to-try-title action []." *See Florey,* 212 S.W.3d at 449; *see also Sani v. Powell,* 153 S.W.3d 736, 746 (Tex.App.-Dallas 2005, pet. denied) (quiet title claim involving allegedly invalid tax sale of property characterized as trespass to try title action). "A trespass to try title action is the method of determining title to lands, tenements, or other real property." Tex.Prop.Code Ann. §22.001 (Vernon 2000). A trespass to try title action "is typically used to clear problems in chains of title or to recover possession of land unlawfully withheld from a rightful owner." *See Martin v. Amerman,* 133 S.W.3d 262, 265 (Tex.2004), *superseded by statute,* Tex.Civ.Prac.&Rem.Code Ann. §37.004 (Vernon 2008) (reversing *Martin's* holding that relief under the Declaratory Judgment Act was unavailable for boundary dispute.) It is the exclusive remedy by which to resolve competing claims to property. *Jordan v. Bustamante,* 158 S.W.3d 29, 34 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). Courts require claimants bringing this type of "suit to quiet title" to base their claims on the strength of their own title. *See Kennedy Co., Inc. v. Forman,* 316 S.W.3d 129, 135 (Tex.App.-Houston [14th Dist.] 2010, no pet.); *Alkas,* 672 S.W.2d at 857. To recover, a claimant must establish a prima facie right of title

by proving one of the following: (1) a regular chain of conveyances from the sovereign; (2) a superior title out of a common source; (3) title by limitations; or (4) prior possession, which has not been abandoned. *Kennedy Con., Inc.*, 316 S.W.3d at 135.

The second type of claim, which involves other "clouds" on an undisputed owner's title to real property, challenges an adverse interest that impacts title and possession only indirectly. *See Florey*, 212 S.W.3d at 449; *see also Max Duncan Family Inv., Ltd. V. NTFN Inc.*, 267 S.W.3d 447, 453-54 (Tex.App.-Dallas 2008, pet. denied)(undisputed property owner's suit to invalidate promissory note and lien securing note "involve[d] more than just title and possession of real property"); *Cadle Co. v. Ortiz*, 227 S.W.3d 831, 837-38 (Tex.App.-Corpus Christi 2007, pet. denied)(undisputed property owner's post-foreclosure suit to invalidate mechanic's lien distinguished from trespass to try title action); *Sw. Guar. Trust Co.*, 981 S.W.2d at 957 (undisputed property owner's action to declare lien invalid was "really one to quiet title"). A claim is sufficiently adverse if its assertion would cast a cloud on the owner's enjoyment of the property. *See Katz v. Rodriguez*, 563 S.W.2d 627, 629 (Tex.Civ.App.-Corpus Christi 1977, writ ref'd n.r.e). To remove such a cloud, a plaintiff must "allege right, title, or ownership in herself with sufficient certainty to enable the court to see she has a right of ownership that will warrant judicial interference." *Wright*, 26 S.W.3d at 578.

Plaintiff has established that he was deeded the property via Warranty Deed with Vendor's Lien on March 27, 2003. (Exhibit PD) Plaintiff alleged and Defendants do not dispute that Plaintiff holds title to the property subject to the Warranty Deed. This satisfies the requirement that they "allege right, title, or ownership in herself with sufficient certainty to enable the court to see she has a right of ownership that will warrant judicial interference" in the issue of the deed of trust's validity. *Wright*, 26 S.W.3d 575 Defendants alleged claim to the property directly stems from the Note and Deed of Trust as executed on August 18, 2003 and therefore their claim that Plaintiff failed to allege superior title is wholly absurd. However, according to the Warranty Deed, "Wells Fargo, at Grantee's request, has paid in cash to Grantor that portion of the purchase price of the Property that is evidenced by the note". This would seem to insinuate that Wells Fargo funded the Note on March 27, 2003 and not Northwood Mortgage, Inc. on April 18, 2003 which was listed on the Note. This fact would create a fact issue for trial.

12

Since Defendants are not the holders or owners of the Note, Plaintiff would argue that as deed holder and possessor of the property its claim is superior to Defendants. Plaintiff would argue that the original Note to Northwood Mortgage, Inc. has been paid in full either by waiver, insurance, payment by investors or credit default swaps. Bottom line is that Defendants are not the holders of the Note and do not own the Note and if Defendants are claiming an interest in the property then a genuine material issue of fact exists to which the Court should deny the Motion for Summary Judgment. Defendants claim that Plaintiff has no evidence on its primary claim that it is entitled to possession of the property but Plaintiff has submitted the Warranty Deed signed on March 27, 2003 that states to the contrary. In fact the "Renewal and Extension Exhibit" states that the original amount of $80, 562.00 was payable to Northwood Mortgage, Inc. not Wells Fargo as the Warranty Deed claims. (Exhibit PE) This would create a fact issue as to the true originator of the loan funds. Plaintiffs held the property subject to a lien by Wells Fargo which was subsequently paid off by Northwood Mortgage, Inc. on April 18, 2003. Since no proper transfer has returned the property to Wells Fargo then Plaintiff has established his superior right to title of the property.

**Plaintiff's claims under the Texas Fair Debt Collection Practices Act ("TDCA") and unreasonable collection efforts are valid.**

25.     Defendants claim that Wells Fargo took no action which violated the TDCA, however, the documentation that Wells Fargo has repeatedly falsified in an attempt to collect this mortgage account shows otherwise. The "allonge to note" which was prepared by "Wells Fargo Home Mortgage, Inc., it's attorney in fact" was falsely attached to the mortgage in order to transfer the property for collection. According to Wells Fargo's information no "Joyce Lockwood" has worked for Wells Fargo. (Exhibit PA – response to interrogatory 1) The "Appointment of Substitute Trustee" was falsely executed on January 2, 2009 by Wells Fargo Bank, N.A. The "appointment"

13

was signed by Stephen Porter as Vice President of Loan Documentation for Wells Fargo Bank,

N.A. However, according to Wells Fargo's answers to interrogatories Stephen Porter is Chief

Litigation Counsel for Barrett Daffin Frappier Turner & Engel, LLP. Since Stephen Porter never

worked for Wells Fargo as "vice president of loan documentation" Wells Fargo has fraudulently

appointed a substitute trustee in violation of the Deed of Trust. (Exhibit PA – response to

interrogatory 3) Additionally, pursuant to paragraph C. of the limited power of attorney signed by

Northwood Mortgage, Inc. to Crossland Mortgage Corp., Crossland Mortgage Corp. is the

"attorney-in-fact for the limited purpose of executing **all** endorsements and assignments of the Loan

and Loan Documents". (Exhibit PF) Therefore any endorsements or assignments not done by

Crossland Mortgage Corp. on behalf of Northwood Mortgage, Inc. are void as a matter of law. This

would create a fact issue for trial.

26.     Recently, the United States District Court for the Northern District of Texas found that

"foreclosure actions inevitably involve a debt collection aspect." *Biggers v. BAC Home Loans*

*Servicing, LP,* 2011 WL 588059 at *5 (N.D. Tex. February 10, 2011)(Fitzwater, J.). More

specifically, that Court held that "because under Texas law a notice of default and opportunity to

cure must precede a foreclosure sale and notice of a foreclosure sale, *see* TEX.PROP.CODE

ANN. §51.002(d)(West Supp. 2010), foreclosure actions inevitably involve a debt collection

aspect. Therefore it appears that the TDCPA applies to foreclosure actions." *Id.*

        Plaintiffs pled that Wells Fargo made false or misleading statements. Wells Fargo

repeatedly stated to the homeowner that they were the owners of the Note when in fact they were

not. Wells Fargo made repeated false or misleading statements when they stated that Wells

Fargo was the servicer and that Wells Fargo was entitled to foreclose the property. Defendants

made misleading statements when they fraudulently filed a false assignment of Plaintiffs Deed of

Trust. Plaintiff pled that Wells Fargo eventually foreclosed on and sold their Property despite

not having the authority to foreclose. Plaintiffs pled that Wells Fargo, in foreclosing on and selling Plaintiff's property, was acting to collect a debt. *See Biggers v. BAC Home Loans Servicing, LP*, 2011 WL 588059 at *5 (N.D. Tex. February 10, 2011)(Fitzwater, J.); *see also Gomez v. Wells Fargo Bank, N.A.*, 2010 WL 2900351 at *4 (N.D. Tex.); *Wells Fargo Bank, NA, as Trustee v. Laureno A. Ballestas et al*, No. 01-10-00020-CV (Tex.App.-Houston [1st Dist.\ May 12, 2011). Therefore, Wells Fargo is subject to the DCPA of Texas. Defendants used false representations and deceptive means to collect the debt through foreclosure. TEX.FIN.CODE §392.304(a)(19). Every statement, every letter and every notice that was supplied to Plaintiffs subsequent to the false assignment was a misleading or false representation under the Texas Finance Code.

27.     Plaintiff has repeatedly requested an accounting of the loan from its inception to its present state but has yet to receive any documentation. Additionally, the original loan amount to Northwood Mortgage, Inc. was for $86,100 on April 18, 2003 but the foreclosure sale lists the amount of sale as of September 1, 2009 as $90,085.05. In fact, the unpaid balance according to Wells Fargo was $79,301 on June 12, 2009. (Exhibit PG) The Plaintiff has never received an accounting of the sale nor the over-payment of funds as required by law.

## IV.     CONCLUSION

In conclusion, Plaintiff requests the Court to deny Defendant's Motion for Summary Judgment. Viewing the evidence in the light most favorable to the non-movant, the Court should find that a fact issue exists. For these reasons, Plaintiff requests the Court to sustain Plaintiff's objection to the declaration of Michael John Dolan, sustain Plaintiff's objection to the affidavit of Becky Howell, sustain Plaintiff's objection to the use of the exhibits as summary judgment evidence, conclude that Defendants have failed to prove that no issue of fact exists regarding the creation and/or transfer of the mortgage,  the terms of the agreement and the suit to quiet

15

title/trespass to try title, order Defendants to provide an accounting from the origination of the loan and for any other relief Plaintiff is entitled to.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that the Court deny Defendants' Motion for Summary Judgment in its entirety and for such other and further relief to which they are entitled.

Respectfully submitted,


/s/ Eric A. Maskell
Eric A. Maskell
Maskell Law Firm, P.C.
Attorneys at Law
SBN #24041409
P.O. Box 77272
Fort Worth, Texas 76177
Telephone (682) 465-6503
Facsimile (817) 887-2654
Attorney for Plaintiff


## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this Plaintiff's Brief in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment has been forwarded to all counsel of record by U.S. First Class Mail, certified mail, and/or electronic mail on this, the 29th day of December, 2012.


/s/ Eric A. Maskell
Eric A. Maskell